**STATE OF MONTANA,**
Plaintiff–Appellee,

v.

**Toni A. GILHAM, individually and as Personal Representative of the Estate of Christine Marie Gilham, Defendant–Appellant.**

No. 96–35766.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 1997.

Decided Oct. 22, 1997.

Turner C. Graybill, Graybill, Ostrem & Crotty, Great Falls, MT, for defendant-appellant.

Paul R. Haffeman, Maxon R. Davis, Davis, Hatley, Haffeman & Tighe, Great Falls, MT, Clay R. Smith, Solicitor, Harley R. Harris, Asst. Atty. Gen., Office of the Attorney General, Helena, MT, for plaintiff-appellee.

Before: REINHARDT and THOMAS, Circuit Judges, and SEDWICK,* District Judge.

THOMAS, Circuit Judge:

This appeal raises the question of whether the State of Montana may be subject to an unconsented tort action filed by an individual plaintiff in Blackfeet Tribal Court. We hold that Montana's sovereign immunity bars such an action.

I

Our consideration of these questions of dominion and authority has its genesis in a personal tragedy. On January 14, 1986, Christine Gilham was fatally injured when the car in which she was a passenger struck a permanently anchored highway sign at the intersection of U.S. Highways 2 and 89 within the external boundaries of the Blackfeet Indian Reservation, located in the State of Montana. Toni Gilham ("Gilham"), Christine's mother, brought an action against the driver of the car, who was intoxicated at the time of the accident, and the State of Montana ("Montana") in the Blackfeet Tribal Court. She alleged that Montana was negligent in its design, construction, and maintenance of the intersection.

* Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

Montana filed a motion to dismiss for lack of jurisdiction, arguing that as a sovereign it is immune from suit in the Blackfeet Tribal Court absent a waiver of its sovereign immunity. The tribal court denied the motion, and the case proceeded to trial. The jury returned a verdict against the driver and Montana for $280,000. After application of comparative negligence and distribution of the proceeds of the driver's insurance policy, judgment was entered against the defendants rendering them jointly and severally liable for $159,664.92. Montana unsuccessfully appealed the immunity issue to the Blackfeet Court of Appeals and the Blackfeet Supreme Court, both courts affirming the trial court's ruling. The courts found that Article II, § 18 of the Constitution of Montana waived Montana's immunity from suit in the tribal courts. The Blackfeet Supreme Court remanded the case to the tribal court for further proceedings on issues unrelated to the sovereign immunity question.

Montana filed this action for declaratory relief in the U.S. District Court for the District of Montana challenging the jurisdiction of the Blackfeet Tribal Court. Montana also sought an injunction against further proceedings in the tribal court pending the district court's resolution of the jurisdictional question. The district court granted Montana's motion for summary judgment and denied Gilham's cross-motion for summary judgment which sought an order requiring Montana to accept the judgment of the Blackfeet Tribal Court. The district court reasoned that Montana, as a sovereign, enjoys immunity from suit in tribal courts. The court further held that Article II, § 18 of the Montana Constitution does not waive this immunity because that provision only waives Montana's immunity from suit in Montana state courts. Because it concluded the Blackfeet Tribal Court lacked jurisdiction over Mon-

tana, the court also granted Montana's request for injunctive relief against further proceedings in the tribal court. Gilham timely appealed.

## II

■ Tribal court jurisdiction over non-Indians is a question of federal law which we review *de novo*. *United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 905 (9th Cir.1994). Whether the State of Montana is immune from suit in tribal court involves two questions:[1] (1) whether Montana has sovereign immunity from suit in the tribal courts, and (2) if so, whether Montana waived this immunity in Article II, § 18 of the Montana Constitution.

### A

As Hamilton observed: "[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense and the general practice of mankind; and the exemption as one of the attributes of sovereignty is now enjoyed by the government of every state in the union." The Federalist No. 81, p. 548–49 (J. Cooke ed.1961). As Chief Justice John Marshall more colloquially put it: "[it] is not rational to suppose that a sovereign power should be dragged before a court." 3 Elliot, Debates in the Several State Conventions on the Adoption of the Federal Constitution 555 (2d ed. 1863).[2]

The States and Indian tribes, as co-existing sovereigns with significant and complex commercial, governmental and property interrelationships, often require a mechanism to determine their respective rights and interests. Finding a forum to resolve disputes is problematic, for each sovereign naturally defends the jurisdictional reach of its own courts and resists being "dragged before"

---

1. Montana contends that the tribal court lacked jurisdiction under *Strate v. A–1 Contractors*, —— U.S. ——, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). However, whether the accident occurred on a right-of-way granted by the Blackfeet Tribe is a disputed genuine issue of material fact which the district court did not resolve, so we cannot consider it on summary judgment.

2. A more forceful view was expressed by Pennsylvania Delegate George Mason in commenting on the possibility that States could be sued in federal court: "Is this not disgraceful? Is this state to be brought to the bar of justice like a delinquent individual? Is the sovereignty of the state to be arraigned like a culprit, or private offender?" 2 Elliot's Debates in the Several State Conventions on the Adoption of the Federal Constitution 490 (2d ed. 1863).

the courts of the other. *See, e.g., Wippert v. Blackfeet Tribe,* 260 Mont. 93, 859 P.2d 420 (1993). Thus, in determining whether Montana is immune from this tort action, we must first briefly examine the nature of tribal and State sovereignty.

"Indian tribes have been recognized, first by the European nations, later by the United States, 'as distinct, independent political communities' qualified to exercise powers of self-government, not by virtue of any delegation of powers, but rather by reason of their original tribal sovereignty." F. Cohen, *Handbook of Federal Indian Law* 232 (1982 ed.) (quoting *Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 519, 8 L.Ed. 483 (1832)). Tribal sovereignty is of "a unique and limited character." *United States v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978). The incorporation of tribes within the territory of the United States means that tribal sovereignty "exists only at the sufferance of Congress and is subject to complete defeasance." *Id.* However, "until Congress acts, the tribes retain their sovereign powers." *Id.*

■ Foremost among the attributes of sovereignty retained by Indian tribes is immunity from suit. Absent congressional action, consent or waiver, an Indian tribe may not be subject to suit in state or federal court. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1676, 56 L.Ed.2d 106 (1978); *Snow v. Quinault Indian Nation,* 709 F.2d 1319, 1321 (9th Cir.1983). This general rule of tribal immunity is privileged from diminution by the States. *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g,* 476 U.S. 877, 891, 106 S.Ct. 2305, 2313, 90 L.Ed.2d 881 (1986).

■ Similarly, with some exceptions, the sovereignty of States insulates them from unconsented litigation in federal court. U.S. Const., amend XI; *Seminole Tribe of Florida v. Florida,* —— U.S. ——, —— – ——, 116 S.Ct. 1114, 1122–23, 134 L.Ed.2d 252 (1996). This principle is founded on the presupposition that "the States entered the federal system with their sovereignty intact" and "that the judicial authority in Article III is

limited by this sovereignty." *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991). Thus, absent congressional action, consent or waiver, States may not be sued by Indian tribes in federal court. *Cabazon Band of Mission Indians v. Wilson,* 124 F.3d 1050, 1057 (9th Cir.1997).

Thus, as coexistent sovereigns, conflicts between States and tribes cannot ordinarily be resolved judicially without one of them giving up sovereign immunity. Fortunately, we are not confronted with that dilemma here because the question in this case is different. An individual, not a tribe, is suing Montana in tribal court.

■ Neither the Constitution, nor congressional act provide express guidance for resolution of this question. Such a suit would normally be barred in federal court by the Eleventh Amendment. However, the Eleventh Amendment by its terms only applies to exercise of "the judicial power of the United States." U.S. Const., amend XI. While "the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III," *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984), the tribal courts are not Article III courts. *See, e.g.,* 25 U.S.C. § 3631(5) ("Nothing in [the Indian Tribal Justice Act] shall be construed to ... imply that any tribal justice system is an instrumentality of the United States...."). The tribes derive their adjudicatory power not from Article III, but from their inherent sovereignty as the aboriginal people of this continent, from the vestiges of their once absolute authority over their internal affairs. *Native Village of Venetie I.R.A. Council v. Alaska,* 944 F.2d 548, 556 (9th Cir.1991). Accordingly, the Eleventh Amendment affords no Constitutional limit on the jurisdiction of tribal courts.

Similarly, although Congress has plenary power over tribes, *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1676, it has neither proscribed the jurisdictional reach of tribal courts, nor attempted to abrogate State sovereign immunity in this context.[3] Thus, any

---

3. For example, 18 U.S.C. § 1162(a) (1970) af-

fects the jurisdictional relationships between

limitation on tribal court authority to entertain a suit against a State must arise from a source other than direct application of the Eleventh Amendment or congressional act.

That source is the inherent sovereign powers of the States. *Blatchford* underscored the fact that the Eleventh Amendment stands "not so much for what it says, but for the presupposition of our constitutional structure which it confirms...." *Blatchford*, 501 U.S. at 779, 111 S.Ct. at 2581. The referenced presupposition is that the States surrendered their immunity from suits by sister States in federal court by the "mutuality of that concession" in the Constitutional Convention. *Id.* at 782, 111 S.Ct. at 2582. However, by contrast, "[t]here is no such mutuality with either foreign sovereigns or Indian Tribes." *Id.* at 782, 111 S.Ct. at 2582. Thus, when States entered the union, they did not generally surrender or waive their inherent sovereign immunity from suit in federal court.

■ What then, is the scope of the Indian tribal court power in this instance? The tribes' status as distinct, independent political communities qualified to exercise powers of self-government arises from their original tribal sovereignty over their members rather than from any constitutional source. *Native Village of Venetie*, 944 F.2d at 556. The tribes retain whatever inherent sovereignty they had as the original inhabitants of this continent to the extent that sovereignty has not been removed by Congress, *Escondido Mut. Water Co. v. La Jolla Band of Mission Indians*, 466 U.S. 765, 788 n. 30, 104 S.Ct. 2105, 2118 n. 30, 80 L.Ed.2d 753 (1984), or is inconsistent with the overriding interest of the Federal Government, *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 153, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10 (1980). *See also Native Village of Venetie*, 944 F.2d at 556. In deter-

mining whether the tribes currently possess a certain power or authority, we must determine whether they traditionally had such power or authority before they assumed their current dependent status.

Two Supreme Court cases provide some illumination. In *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), the Supreme Court held that Indian tribes do not have the authority to exercise criminal jurisdiction over non-Indians because such authority was not a part of their retained inherent sovereignty. That is, because they did not have such authority before they assumed their current dependent status, they could not have retained it as a remnant of their inherent sovereignty. Similarly, in *Duro v. Reina*, 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990), the Court held that an Indian tribe may not assert criminal jurisdiction over a non-member Indian because in the area of criminal enforcement, tribal power did not extend beyond internal relations among members, so the inherent sovereignty of the tribe does not extend to such jurisdiction.

■ Merging these two historical and theoretical considerations, we must conclude that the States have retained their historic sovereign immunity from suits by individuals and that nothing in the inherent retained powers of tribes abrogates that immunity.[4]

### B

For this reason, *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979) does not compel a different conclusion. In that case, the Supreme Court held that sovereign immunity did not prevent California residents injured in an automobile accident with an employee of the University of Nevada from suing the State of Nevada in Califor-

some States and tribes. However, it is not operative between the Blackfeet Indian Nation and Montana. *Iowa Mut. Ins. Co. v. La Plante*, 480 U.S. 9, 13 n. 7, 107 S.Ct. 971, 976 n. 7, 94 L.Ed.2d 10 (1987).

4. This result is consistent with immunity decisions in other contexts. For example, the United States, as a superior sovereign, is absolutely immune from unconsented suit in tribal court.

*United States v. Yakima Tribal Court*, 806 F.2d 853, 858–60 (9th Cir.1986). Further, tribes have retained their sovereign immunity even from claims raised in a compulsory counterclaim by a State to an action filed by the tribe. *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509–10, 111 S.Ct. 905, 909–10, 112 L.Ed.2d 1112 (1991).

nia state courts. *Id.* at 411–12, 99 S.Ct. at 1183–84.

The theory underlying *Nevada v. Hall* was that there were no constitutional limitations on a State's power to authorize its courts to exercise jurisdiction over another State and that therefore Nevada's immunity from suit would be answered by reference to California law. *Id.* at 417, 99 S.Ct. at 1186. The Court reached this conclusion "in view of the Tenth Amendment's reminder that powers not delegated to the Federal Government nor prohibited to the States are reserved to the States or to the people...." *Id.* at 424–25, 99 S.Ct. at 1190–91.

Because, as we have discussed, tribal courts historically did not possess and have not retained sovereign powers over States, *Nevada v. Hall*'s analysis cannot apply.[5] The power to subject other sovereigns to suit in tribal court was simply not a part of the tribes' inherent sovereignty. Accordingly, when the tribes assumed their current dependent status, this power did not exist for it to be retained. That the tribes' ability to subject the States to suit in tribal court was never an aspect of tribal sovereignty is made all the more clear by the Supreme Court's acknowledgment that "[u]ntil the middle of this century, few Indian tribes maintained any semblance of a formal court system." *Oliphant,* 435 U.S. at 197, 98 S.Ct. at 1015. Thus, *Nevada v. Hall* does not alter our immunity analysis.[6]

**C**

■ In tribal court proceedings in this case, the Blackfeet Supreme Court acknowledged that Montana is immune from suit in Blackfeet tribal court, but found that Montana had waived this immunity in the Constitution of Montana.

Article II, § 18 of the Montana Constitution provides:

> Section 18. State subject to suit. The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.

Mont. Const. art. II, § 18. *See also* Mont. Code Ann. § 2–9–102 (1995) (implementing Article II, § 18).

The district court correctly found Montana's waiver of its sovereign immunity to be limited to its own courts. The question of waiver has arisen frequently in cases concerning the Eleventh Amendment. Although the Eleventh Amendment does not directly bear on this question, the district court relied heavily on this body of law, and correctly so. Because, as we have discussed, the Eleventh Amendment confirms pre-existing State sovereign immunity, cases construing how that

---

**5.** In connection with a *Nevada v. Hall* analysis, "[t]ribal sovereign immunity ... is not precisely the same as either international sovereign immunity or sovereign immunity among the States." *Richardson v. Mt. Adams Furniture (In re Greene),* 980 F.2d 590, 600 (9th Cir.1992) (J. Rymer, concurring).

**6.** Even if *Nevada v. Hall* were extended to include Indian tribes, it could not apply to Gilham's suit. *Nevada v. Hall* was limited to cases in which the exercise of another sovereign's jurisdiction did not threaten "our constitutional system of cooperative federalism." *Id.* at 424 n. 24, 99 S.Ct. at 1190 n. 24. *Nevada v. Hall* involved a simple case of respondeat superior tort liability for a traffic accident caused by a government employee. Potential liability for this type of action could not interfere with Nevada's capacity to fulfill its sovereign responsibilities. *Id. See, e.g., Guarini v. New York,* 215 N.J.Super. 426, 521 A.2d 1362, 1366–68, (Super.Ct. Ch. Div.) (New York immune from suit in New Jersey court because suit would "violate principles of cooper-

ative federalism and interfere with New York's exercise of sovereign responsibilities") (citing *Nevada v. Hall,* 440 U.S. at 424 n. 24, 99 S.Ct. at 1190 n. 24), *aff'd,* 215 N.J.Super. 293, 521 A.2d 1294 (Super.Ct.App.Div.1986).

Gilham's suit directly implicates the exercise of Montana's sovereign functions. Gilham would hold Montana liable for its governmental decisions concerning highway design. This is far different from respondeat superior tort liability, which would normally only have financial effect. Because the suit's theory would affect governmental processes, it falls outside the scope of *Nevada v. Hall.*

Additionally, *Nevada v. Hall* liability turns on the law of the forum sovereign concerning immunity. In this case, the Blackfeet Supreme Court has recognized Montana's sovereign immunity from suit in tribal court, although it erroneously construed Montana's Constitution as waiving that immunity.

immunity may be waived are instructive here.

■ We begin with the general proposition that "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907. "A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts and thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*" *Harrison v. Hickel,* 6 F.3d 1347, 1354 (9th Cir. 1993) (quoting *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 305–06, 110 S.Ct. 1868, 1872–73, 109 L.Ed.2d 264 (1990) (alteration and internal quotation marks omitted)). *See also Idaho v. Coeur d'Alene Tribe of Idaho,* —— U.S. ——, ——, 117 S.Ct. 2028, 2036, 138 L.Ed.2d 438 (1997) ("States have real and vital interests in preferring their own forum [over a federal forum] in suits brought against them, interests that ought not to be disregarded based upon a waiver [of immunity in the state forum]"); *Riggle v. California,* 577 F.2d 579, 585 (9th Cir.1978) ("A state may waive immunity from suit in its own courts without thereby waiving its Eleventh Amendment immunity from suit in federal courts.").

Courts will find that a State has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Harrison,* 6 F.3d at 1354 (quoting *Atascadero State Hosp. v. Scanlon,*

473 U.S. 234, 239–40, 105 S.Ct. 3142, 3145–46, 87 L.Ed.2d 171 (1985)) (alteration in original). Because "[t]he language of article 2, section 18, of the Montana Constitution does not meet that standard," *Montana v. Peretti,* 661 F.2d 756, 758 (9th Cir.1981), Montana has not waived its immunity from suit in federal court.

For similar reasons, Montana has not waived its immunity from suit in tribal court. Indeed, given the rigor of the waiver standard, the only reasonable construction of Article II, § 18 is that Montana has consented to suit only in its own state courts. *See, e.g., Holladay v. Montana,* 506 F.Supp. 1317, 1321 (D.Mont.1981) ("The Montana waiver of sovereign immunity [in article 2, section 18 of its Constitution] seems to be limited to consent to be sued in state courts...."); *Peretti v. State,* 238 Mont. 239, 777 P.2d 329, 332 (1989) ("any waiver of a State's sovereign immunity must be strictly construed").[7] Thus, Article II, § 18 of the Constitution of Montana does not waive Montana's immunity from suit in tribal court.

■ Gilham contends that Montana's compact with the United States contained in Article I of the Constitution of Montana also serves as a waiver of immunity. However, Article I is limited to surrendering property interests in tribal lands; it does not disclaim Montana governmental or regulatory authority. *Northern Border Pipeline Co. v. Montana,* 237 Mont. 117, 772 P.2d 829, 837 (1989). For the same reason, Montana's disclaimer of ownership of tribal lands upon admission to the union does not affect its claim of sovereign immunity in tribal courts.[8]

7. Because Montana has partially waived sovereign immunity for tort suits in its own courts, Gilham has an adequate remedy by pursuing her action in Montana state courts. Gilham contends that Montana state courts would reject jurisdiction of her claim. However, this misreads *State ex rel. Iron Bear v. District Court,* 162 Mont. 335, 512 P.2d 1292 (1973) and its progeny. *Iron Bear* specifically endorses the proposition that a tribal member "has the same rights as are accorded any other person to invoke the state courts to protect his rights in matters not affecting the federal government." *Id.* at 1295. *Iron Bear* established criteria by which a Montana state district court should assess whether a suit was more appropriately heard in tribal

court. *Id.* at 1299. However, under the circumstances presented in this case, where the tribal courts lack jurisdiction because of Montana's sovereign immunity, state court jurisdiction would be proper. Further, equitable tolling would prevent the assertion of a statute of limitations defense against Gilham based on the passage of time litigating in tribal and federal court if Gilham elects to refile her complaint in Montana state court. *Chance v. Harrison,* 272 Mont. 52, 899 P.2d 537, 539 (1995).

8. Gilham reasons from the Constitution of Montana and Montana's Enabling Act, 25 Stat. 676 (1889), that federal law preempts Montana's immunity. However, the disclaimer provision in an

Thus, Montana's Constitution does not serve to waive Montana's immunity from tort actions in tribal courts.

### D

In reaching our conclusions about Montana's immunity from Gilham's tort action in tribal court, we do not intend to paint with too broad a stroke.[9] The jurisdiction of tribal courts is an important and vital matter. Development of tribal court systems is a critical component of tribal self-government, one which courts have encouraged. *See, e.g., Iowa Mut. Ins. Co.,* 480 U.S. at 14–15, 107 S.Ct. at 975–76; *National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 856–57, 105 S.Ct. 2447, 2453–54, 85 L.Ed.2d 818 (1985).

Immunity from tort actions by individuals is also a crucial constituent of sovereignty, both for the tribes and the States. It is consistent with the recognition of sovereignty that both the tribes and the States are immune from unconsented tort actions by individuals in each other's courts. "A real sovereign, a state, a nation is always sovereign. In none of its activities is it ever subject to a higher human will, individual or collective." *Berizzi Bros. Co. v. S.S. Pesaro,* 271 U.S. 562, 568, 46 S.Ct. 611, 70 L.Ed. 1088 (1926). In the absence of congressional action or compact between State and tribe, we do best by respecting the sovereignty of both the Blackfeet Nation and Montana.

### III

Gilham argues it was error for the district court to enjoin the tribal court proceedings the day before they were scheduled to begin. However, because we affirm the district court's ruling that the tribal court lacked the jurisdiction to entertain those proceedings, a reversal of the preliminary injunction would have no effect, and Gilham's appeal from the injunction is moot. *See, e.g., Mount Graham Red Squirrel v. Madigan,* 954 F.2d 1441, 1450 (9th Cir.1992).

Because of our resolution of this case, it is also unnecessary to consider Montana's claim that Blackfeet tribal court jurisdiction is foreclosed under *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981).

AFFIRMED

---

enabling act has been construed as having no independent preemptive effect. *Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 563, 103 S.Ct. 3201, 3211, 77 L.Ed.2d 837 (1983). Further, the doctrine of preemption cannot apply here because there is no state action. *Richardson,* 980 F.2d at 595.

9. For example, we decline to address whether agents of a State may be sued in tribal court or whether States may be subject to a contract suit in tribal court. Our holding is limited to the facts presented by this case: an individual filing a tort action against Montana in Blackfeet tribal court.