BURLINGTON NORTHERN RAIL-
ROAD COMPANY, a Delaware cor-
poration, Plaintiff–Appellee,

v.

Valerie RED WOLF; Gladys Red Wolf;
Randy Red Wolf; Dorrie Bull Tail;
Dewey Bull Tail, Defendants–Appel-
lants.

and

Honorable Ron Arneson, Crow Tribal
Court, Special Judge, Defendant,

and

The Crow Tribe of Indians,
Defendant–Intervenor.

Burlington Northern Railroad Com-
pany, a Delaware corporation,
Plaintiff–Appellee,

v.

Valerie Red Wolf; Gladys Red Wolf;
Randy Red Wolf; Dorrie Bull Tail;
Dewey Bull Tail; Honorable Ron
Arneson, Crow Tribal Court, Special
Judge, Defendants.

The Crow Tribe of Indians, Applicant
in Intervention–Appellant.

Burlington Northern Railroad Com-
pany, a Delaware corporation,
Plaintiff–Appellee,

v.

Valerie Red Wolf; Gladys Red Wolf;
Randy Red Wolf; Dorrie Bull Tail;
Dewey Bull Tail; Honorable Ron
Arneson, Crow Tribal Court, Special
Judge, Defendants.

The Crow Tribe of Indians, Applicant
in Intervention–Appellant.

Nos. 98–35502, 98–35539 and 98–35541.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 17, 1999.

Decided Nov. 17, 1999.

As Amended on Denial of Rehearing
Jan. 6, 2000.

Alexander Blewett III and John C. Hoyt, Hoyt & Blewett, Great Falls, Montana; A. Clifford Edwards, Edwards Law Firm, Billings, Montana, for the defendants-appellants.

Charles G. Cole, Shannen W. Coffin, Steptoe & Johnson, Washington, D.C.; George C. Dalthorp, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Montana; Gary L. Crosby, Fort Worth, Texas; Theodore A. Livingston, Mayer, Brown & Platt, Chicago, Illinois, for the plaintiff-appellee.

John Fredericks III, Fredericks, Pelcyger, Hester & White, Louisville, Colorado, for the intervenor-appellant.

Sarah Krakoff, Indian Law Clinic, Boulder, Colorado; Jeanne S. Whiteing, Whiteing & Smith, Boulder, Colorado, for amicus Blackfeet Tribe.

Maylinn Smith, Missoula, Montana, for amicus Montana-Wyoming Tribal Judges Association.

Before: White, Associate Justice (Ret.),[1] Thomas and McKeown, Circuit Judges.

1. The Honorable Byron R. White, Associate Justice of the United States Supreme Court

THOMAS, Circuit Judge:

This appeal presents the question of whether a tribal court has civil jurisdiction over a tort claim arising from an accident on a right-of-way granted to a railroad by Congress. We conclude that the tribal court lacks jurisdiction, and affirm the district court's grant of an injunction against further prosecution of the tribal court action.

## I

Beverly Nadine Red Wolf and Regina Bull Tail were killed when a Burlington Northern Railroad Company ("Railroad") train car collided with their automobile at a railroad grade crossing south of Lodge Grass, Montana, within the exterior boundaries of the Crow Reservation. The train was traveling along a right-of-way, extending 75 feet on either side from the center of the tracks, granted to the Railroad's predecessor by Congress in 1889. At the time of the collision, the automobile was on the tracks, well within the Railroad's right-of-way.

The Estates filed a wrongful death action against the Railroad in Crow tribal court, resulting in a verdict of $250,000,-000. (By motion of the Estates in tribal court, the judgment was later amended to $25,000,000.) The tribal court denied the Railroad's motion to stay the judgment pending appeal, and ordered the Railroad to post bond in the amount of the judgment. While pursuing relief from the judgment and bond in tribal court appeals, the Railroad also went to federal district court and obtained a preliminary injunction against execution or enforcement of the tribal court judgment.

The Estates appealed the issuance of the preliminary injunction. A panel of this Court reversed the judgment of the district court, holding that the district court could not enjoin tribal court proceedings before tribal remedies had been exhausted. See *Burlington Northern Railroad Co. v.*

*Red Wolf*, 106 F.3d 868 (9th Cir.1997). The Supreme Court granted the Railroad's petition for a writ of certiorari, vacated the judgment, and remanded the case for further consideration in light of *Strate v. A–1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). In turn, this Court remanded the case to the district court for reconsideration under *Strate*.

On remand, the district court concluded that exhaustion of tribal remedies was not required under *Strate*. The Railroad subsequently filed an amended complaint seeking a permanent injunction against further tribal court proceedings for want of jurisdiction. The district court then granted the Railroad's motion for summary judgment, holding that exhaustion was unnecessary and permanently enjoining any further proceedings in tribal court. This timely appeal followed.

## II

■■■ By delaring as to nonmembers, "a tribe's adjudicative jurisdiction does not exceed it's legislative jurisdiction," *Strate* altered the lens through which we view the boundaries of a tribal court's civil adjudication. *See Strate*, 520 U.S. at 453, 117 S.Ct. 1404. In examining a tribal court's jurisdictional reach, *Strate* adopted the analysis established in *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). *Montana*'s main rule is that, absent the contrary intervention of treaty or federal law, a tribe has no civil regulatory authority over non-tribal members for activities on reservation land alienated to non-Indians. *Id.* at 563–65, 101 S.Ct. 1245; *see also Montana v. King*, 191 F.3d 1108 (9th Cir.1999).

■■■ The threshold question in this appeal is whether *Montana*'s main rule applies, that is, whether the property rights

(Ret.), sitting by designation pursuant to 28 U.S.C. § 294(a).

at issue are such that the land may be deemed "alienated" to non-Indians. In *Strate*, the Supreme Court held that a highway right-of-way acquired by a State over land within the boundaries of an Indian reservation was "equivalent, for nonmember governance purposes, to alienated, non-Indian land." *Strate*, 520 U.S. at 454, 117 S.Ct. 1404. We reached the same conclusion as to a federal highway that was built and maintained by the State of Montana. *See Wilson v. Marchington*, 127 F.3d 805, 814 (9th Cir.1997). In *Wilson*, we held that *Strate* precluded tribal civil adjudicatory jurisdiction over a suit brought by a tribal member against a nonmember arising out of an accident on the highway. *See id.* at 815. Similarly, we recently held that a tribe did not have regulatory or civil adjudicatory jurisdiction over Montana's employment practices for work performed on a state-owned highway right-of-way within reservation boundaries. *See King*, 191 F.3d at 1114.

■ For the same reasons, a right-of-way granted to a railroad by Congress over reservation land is "equivalent for nonmember governance purposes, to alienated, non-Indian land." *Strate*, 520 U.S. at 454, 117 S.Ct. 1404. Congressional power over tribal lands is plenary. "[A]ll aspects of Indian sovereignty are subject to defeasance by Congress." *Escondido Mut. Water Co. v. La Jolla Band of Mission Indians*, 466 U.S. 765, 787 n. 30, 104 S.Ct. 2105, 80 L.Ed.2d 753 (1984) (citing *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978)). In this case, the congressional right-of-way grant to the Railroad's predecessor in interest was absolute, encompassing a grant "for the construction, operation and maintenance of its railroad, telegraph, and telephone line through the lands set apart for the use of the Crow Indians." Pub.L. No.

50–134, § 1, 25 Stat. 660 (1889). There is no principled distinction to be made between the jurisdictional analysis applicable to a congressionally-granted highway right-of-way and a congressionally-granted railroad right-of-way. In each case, Congress has acted within its plenary power to bestow rights to a parcel of land upon one party, thereby limiting the rights of another to the same land.

The Estates argue that, because the accident occurred at the intersection of a tribal road and the right-of-way, the right-of-way cannot be considered alienated at the accident point. But this fact does not alter the jurisdictional calculus. Under the congressionally-granted right-of-way, the Tribe had no reserved power to exclude the Railroad from the reservation, nor to exercise dominion or control over the right-of-way. As in *Strate*, the Tribe has lost the "right of absolute and exclusive use and occupation" of the right-of-way, regardless of intersecting tribal roads. *Strate*, 520 U.S. at 456, 117 S.Ct. 1404 (quoting *South Dakota v. Bourland*, 508 U.S. 679, 689, 113 S.Ct. 2309, 124 L.Ed.2d 606 (1993)). Nor does the fact that the Tribe or its members retain title to the affected land distinguish it from the right-of-way at issue in *Strate*. *See* 520 U.S. at 454, 117 S.Ct. 1404.

For similar reasons, the Tribe's power to tax the right-of-way does not create civil jurisdiction over non-members arising out of accidents occurring on the right-of-way. The power to tax is not equivalent to the right to exercise civil jurisdiction over tribal land. *See Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 141–142, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). Indeed, *Merrion* rejected the theory that a tribe's taxation power was co-extensive with its right to exclude non-members from tribal lands. *See id.* at 142, 102 S.Ct. 894.[2] Thus, be-

2. Likewise, in *Burlington Northern Railroad Co. v. Blackfeet Tribe*, 924 F.2d 899, 902–903 (9th Cir.1991), we relied on three grounds to support the taxation power over a railroad right-of-way, none of which distinguishes this

case from *Strate* and *Wilson*. First, the tribe had a continuing property interest in the right-of-way, which no longer suffices for civil jurisdiction under *Strate*. Second, the Railroad benefitted from tribal police and fire

cause a tribe's taxation power is broader than its civil adjudicatory jurisdiction over non-members, the Tribe's authority to tax the right-of-way is not dispositive.

 The Estates also direct our attention to two statutes that they claim as a federal delegation of tribal jurisdiction over the right-of-way. They cite language in the grant that directs that the "operation of such railroad shall be conducted with due regard for the rights of the Indians," § 3, 25 Stat. 660, and the Indian Tribal Justice Support Act of 1993, 25 U.S.C. § 3601 et seq., which simply provides assistance for the development of tribal justice systems. Tribal jurisdiction over nonmembers on land subject to *Montana*'s main rule requires express congressional authorization. *See Strate*, 520 U.S. at 445, 117 S.Ct. 1404. Neither statute contains it.

In sum, under the *Strate* analysis, a federally-created right-of-way is the functional equivalent of land alienated in fee to non-members. Accordingly, *Montana*'s main rule applies to an accident on a right-of-way granted by Congress to the Railroad's predecessor in interest.

### III

 The Estates contend that, even if the *Montana* analysis applies, this case falls within the exceptions to the rule. *Montana* recognized two exceptions to the main rule restricting tribal civil regulatory authority over non-tribal members for activities on reservation land alienated to non-Indians:

> [T]ribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. [First, a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or

its members, through commercial dealing, contracts, leases, or other arrangements. [Second, a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

450 U.S. at 565–66, 101 S.Ct. 1245 (citations omitted).

 The first *Montana* exception applies to non-member consensual relationships with the tribe or its members. The Estates claim that Congress had no power to grant a right-of-way without tribal consent; therefore, they reason, this exception must apply. It is true that Congress allowed the President, in his discretion, to require tribal consent as a condition for granting the right-of-way. *See* § 3, 25 Stat. 660. However, as *Strate*'s application of a similar statute demonstrates, the provision for tribal consent reflected congressional policy, not the limits of congressional power. *See* 520 U.S. at 454, 117 S.Ct. 1404 (noting that right-of-way grant required "consent of the proper tribal officials"), citing 25 U.S.C. § 324. A right-of-way created by congressional grant is a transfer of a property interest that does not create a continuing consensual relationship between a tribe and the grantee. *See King*, 191 F.3d at 1113–14; *Yellowstone County v. Pease*, 96 F.3d 1169, 1176 (9th Cir.1996). Thus, the first *Montana* exception does not apply.

 The second *Montana* exception allows tribal jurisdiction over nonmembers on alienated land when their conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." 450 U.S. at 566, 101 S.Ct. 1245. However, *Montana*'s second exception

---

protection, which similarly benefitted drivers on the highway in *Strate*. Third, taxation remained within the tribe's inherent sover-

eign powers, which *Strate* held did not include civil jurisdiction over nonmembers.

"does not entitle the tribe to complain or obtain relief against every use of fee land that has some adverse effect on the tribe." *Brendale v. Confederated Tribes and Bands of the Yakima Indian Nation,* 492 U.S. 408, 431, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989). A nonmember's impact must be "demonstrably serious." *Id.* The Estates claim that deaths of tribal members cause damage to the community by depriving the Tribe of potential councilmembers, teachers and babysitters. However, *Strate* rejected this argument, noting that "if *Montana*'s second exception requires no more, the exception would severely shrink the rule." 520 U.S. at 458, 117 S.Ct. 1404. As we stated in *Wilson,* "[i]f the possibility of injuring multiple tribal members does not satisfy the second *Montana* exception under *Strate,* then, perforce, [a plaintiff's] status as a tribal member alone cannot." 127 F.3d at 815; *see also County of Lewis v. Allen,* 163 F.3d 509, 515 (9th Cir.1998) (holding that a tribe's bare interest in the safety of its members cannot satisfy the second exception). Nor does the Tribe's burial allowance for its members amount to "demonstrably serious" economic consequences. We do not doubt the truth of John Donne's observation that "[n]o man is an island." *Devotions upon Emergent Occasions,* Meditation 17 (1624). This adage applies with special force in the close, inter-connected tribal culture. However, the Supreme Court has declined to employ this logic in conjunction with the second *Montana* exception. Indeed, it has specifically rejected it. *See Strate,* 520 U.S. at 458–59, 117 S.Ct. 1404.

For these reasons, *Montana*'s main rule, rather than its exceptions, applies to this case. In so holding, we do not reduce tribal sovereignty to mere landownership, or equate a servient land estate with political subordination. Rather, we recognize that when Congress provides for the conveyance of certain property rights from tribes to nonmember parties, it acts within its unique authority to defease tribal jurisdiction to the extent its purposes require. *Montana*'s exceptions continue to protect that tribal jurisdiction which is necessary to govern nonmembers' consensual relationships with a tribe or its members, and to protect tribal integrity against serious encroachments by nonmembers. The absence of tribal jurisdiction does not leave the Tribe or its members without redress for nonmembers' alleged wrongs. Tribal plaintiffs may find a forum in either state or federal courts, as appropriate. *See, e.g., Montana v. Gilham,* 133 F.3d 1133, 1139 n. 6 (9th Cir.1998).

IV

■■■ The district court correctly concluded that exhaustion of tribal remedies was not required in this instance. As a general rule, a federal district court should abstain from asserting federal question jurisdiction over claims that are identical to claims pending in tribal court until the tribal court has had a full opportunity to consider the basis for its own jurisdiction. *See Strate,* 520 U.S. at 449–50, 117 S.Ct. 1404; *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 15, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) ("[C]onsiderations of comity direct that tribal remedies be exhausted before the question is addressed by the District Court."). However, exhaustion is not required where (1) an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, *see Iowa Mut.,* 480 U.S. at 19 n. 12, 107 S.Ct. 971; (2) the action is patently violative of express jurisdictional prohibitions, *see id.;* (3) exhaustion would be futile because of the lack of adequate opportunity to challenge the court's jurisdiction, *see id.; see also Johnson v. Gila River Indian Community,* 174 F.3d 1032, 1036 (9th Cir.1999); or (4) it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule, *see Strate,* 520 U.S. at 459 n. 14, 117 S.Ct. 1404.

■■■ Under the fourth exception, first enunciated in *Strate,* exhaustion is not required when "tribal court jurisdiction does not exist under *Montana* and *Strate,*" and remand would only delay a final judg-

ment. *County of Lewis v. Allen,* 163 F.3d 509, 516 (1998). Because tribal courts plainly do not have jurisdiction over this controversy pursuant to *Montana* and *Strate,* the Railroad was not required to exhaust its tribal remedies before proceeding in federal court.

## V

The right-of-way granted the Railroad by Congress is indistinguishable for analytic purposes from the right-of-way at issue in *Strate.* Accordingly, the tribal courts did not possess civil jurisdiction over a non-member arising out of an accident occurring within the right-of-way. Because no tribal jurisdiction existed under *Strate,* the Railroad was not required to exhaust tribal remedies. Given this result, it is unnecessary for us to reach the question of whether the district court should have granted the Crow Tribe's motion to intervene. We affirm the judgment of the district court.

AFFIRMED.