## GLACIER ELECTRIC COOPERATIVE, INC., Plaintiff,

v.

## Floyd WILLIAMS, Defendant.

### No. CV–99–028GF–PGH.

United States District Court, D. Montana, Great Falls Division.

Nov. 22, 1999.

---

Larry D. Epstein, Werner, Nelson & Epstein, Cut Bank, MT, Thane P. Johnson, Johnson Law Office, Cut Bank, MT, for Plaintiff.

Patrick F. Flaherty, Flaherty Law Office, Great Falls, MT, Steven T. Potts, Thompson, Jacobsen & Potts, Great Falls, MT, for Defendant.

### MEMORANDUM AND ORDER

HATFIELD, Senior District Judge.

Plaintiff, Glacier Electric Cooperative, Inc. ("GEC"), instituted the above-entitled action for declaratory and injunctive relief, challenging the authority of the Blackfeet Tribal Court to exercise civil subject matter jurisdiction over it in an action present-ly pending in Blackfeet Tribal Court entitled *Floyd Williams v. Glacier Electric Cooperative, Inc.*, Case No. 97–CA–189 ("Tribal Court action"). GEC invokes the federal question jurisdiction of this court pursuant to 28 U.S.C. § 1331.

Presently before the court are: (1) GEC's request for a preliminary injunction to enjoin Floyd Williams ("Williams") from further prosecution of the Tribal Court action; and (2) defendant Williams' motion to dismiss for failure to state a claim or, in the alternative, to stay this action pending resolution of the Tribal Court action.

Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

### BACKGROUND

In March of 1997, Williams was allegedly injured while removing power poles and lines located on trust land within the boundaries of the Blackfeet Indian Reservation. At the time of the accident, the trust land upon which the power poles and lines were located was leased by a nonmember of the Blackfeet Tribe.

On April 7, 1997, Williams, who is not a tribal member, filed a complaint against GEC, which is also not a tribal member, in Blackfeet Tribal Court, seeking compensatory and punitive damages resulting from the accident. Williams' complaint alleged, *inter alia*, GEC's negligence caused the underlying accident and resultant damages. Williams contended GEC acted negligently in refusing to remove the lines and poles and in insisting that the utility's customer remove them.

GEC moved to dismiss. The Tribal Court granted GEC's motion and dismissed the Tribal Court action for lack of subject matter jurisdiction. Williams appealed the dismissal. The Court of Appeals for the Blackfeet Indian Reservation reversed, finding both *Montana*[1] excep-

---

1. *See, Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). In *Montana,* the Supreme Court held that an Indian tribe could not regulate hunting by non-Indians on non-Indian-owned fee land within the reservation. *See, Allstate Indemnity Co. v. Stump,* No. 97–35822, 1999 WL 1029492, at \*3 (9th Cir. Nov.15, 1999), *citing, Montana,* 450 U.S. at 565–66, 101 S.Ct. 1245. While tribes may regulate hunting on land

tions conferred subject matter jurisdiction upon the Tribal Court. The Blackfeet Court of Appeals remanded the matter to the Tribal Court, where it is now pending.

Immediately following Williams' filing of the Tribal Court action, GEC brought a declaratory judgment action in Montana's Ninth Judicial District Court, Glacier County, seeking, *inter alia*, a determination that the Tribal Court lacked subject matter jurisdiction over Williams' claims.[2] On September 5, 1997, *i.e.*, before either the Tribal Court or the Court of Appeals had addressed the issue of jurisdiction, state District Court Judge McKeon dismissed GEC's declaratory judgment action, electing to defer to the Blackfeet Tribal Court for determination of jurisdiction. Judge McKeon determined GEC had not presented a "justiciable controversy" because it was unclear whether the trust land upon which Williams was allegedly injured could be characterized as land "alienated to non-Indians," a fact critical to determining jurisdiction pursuant to the United States Supreme Court's decision in *Strate v. A–1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).[3]

GEC filed the instant action alleging it has exhausted its Tribal Court remedies in light of the Blackfeet Court of Appeals' order finding jurisdiction lies in the Tribal Court. GEC further maintains the Blackfeet Tribal Court's exertion of jurisdiction

over Williams' negligence action runs afoul of the United States Supreme Court's decisions in *Montana* and *Strate*. GEC argues in the alternative that, even if it has not exhausted its Tribal Court remedies, this court should find exhaustion unnecessary pursuant to *Strate*, in which the Court noted:

> when it is plain that no federal grant provides for tribal governance of non-members' conduct on land covered by *Montana's* main rule ... the otherwise applicable exhaustion requirement must give way, for it would serve no purpose other than delay.

*Strate*, 520 U.S. at 459–60 n. 14, 117 S.Ct. 1404.

Williams argues the state court's decision deferring to the Tribal Court for a determination of jurisdiction has *res judicata* effect over this action. Williams further asks the court to dismiss this action or stay its hand pending resolution of the Tribal Court action. Finally, Williams argues application of *Montana* and *Strate* must lead this court to the conclusion that the Tribal Court has jurisdiction over his claims.

## DISCUSSION

### A. Res Judicata.

The law of the state of Montana governs whether *res judicata* bars GEC's instant action for declaratory and injunc-

---

owned by the tribe or land held in trust for the tribe, tribes lack jurisdiction over the activities of non-Indians on non-Indian fee land except when (1) the nonmembers have entered into "consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements," or (2) the non-Indians' conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of a tribe." *Id.*

2. GEC filed its state court declaratory judgment action on April 10, 1997.

3. The Supreme Court in *Strate* expanded the *Montana* rule. In *Strate*, the Court addressed whether a tribe could exercise jurisdiction over a lawsuit stemming from an automobile accident involving non-Indians and occurring

on a state highway that ran through a reservation. The United States had granted the state of North Dakota a right-of-way across the reservation for maintenance of a highway. The right-of-way was open to the public and the traffic on it was subject to state control. The tribe had forfeited the right to control the highway and to exclude others from the land. Thus, the Court held that the highway right-of-way was "equivalent, for nonmember governance purposes, to alienated, non-Indian land," and thus fell within *Montana's* main rule. *Strate*, 520 U.S. at 454, 459, 117 S.Ct. 1404. The jurisdictional issue presented in the case at hand, as Judge McKeon correctly noted, turns on whether the trust land upon which the accident occurred is equivalent to alienated non-Indian land, a conclusion that would likely trigger application of *Montana's* analysis.

tive relief. 28 U.S.C. § 1738 (federal courts must give same preclusive effect to state court judgments as would state court); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 250 (9th Cir.1992). Under Montana law, application of *res judicata* requires satisfaction of four factors: (1) the parties or their privies are the same; (2) the subject matter of the claim is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the persons are the same in reference to the subject matter and the issues. *Butler v. Colwell,* 291 Mont. 134, 967 P.2d 779, 781–82 (1998). Identity of the issues is the most important of these criteria. *See, Hollister v. Forsythe,* 277 Mont. 23, 918 P.2d 665, 667 (1996). "Unless it clearly appears that the precise question involved in the second case was raised and determined in the former, the judgment is no bar to the record action." *Baertsch v. County of Lewis and Clark,* 223 Mont. 206, 727 P.2d 504, 506 (1986).

The present record demonstrates that the question raised in GEC's state court declaratory judgment action is not precisely the same question raised here. In the state court action, GEC asked the court to address whether the state court, and not the Tribal Court, had jurisdiction, even before the Tribal Court was given an opportunity to determine its own jurisdiction. In contrast, GEC asks this court to determine whether the Tribal Court has jurisdiction now that the Tribal Court has determined, at least preliminarily, that it has jurisdiction over Williams' claims. This is not the same precise issue. Moreover, by deferring to the Tribal Court on the question, the state court did not reach a decision on the merits, which is ordinarily a prerequisite to application of the *res judicata* doctrine. *See, e.g., Nordhorn v. Ladish Co.,* 9 F.3d 1402, 1404 (9th Cir.

1993). Thus, *res judicata* does not bar GEC's instant action.

## B.  Exhaustion.

The question of whether an Indian Tribe retains the authority to compel a non-Indian to submit to the jurisdiction of a tribal court presents a question of federal law, properly determined by the federal courts, the final arbiters of federal law. *National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 852, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985).[4] Nonetheless, considerations of comity, predicated upon the well-recognized Congressional policy of promoting tribal self-government and self-determination, compelled the Court in *National Farmers Union* to announce a rule of exhaustion, which requires tribal court remedies to be exhausted before the question of tribal jurisdiction is addressed by the federal courts. 471 U.S. at 856–57, 105 S.Ct. 2447. The Court concluded proper respect for tribal legal institutions required the federal courts to afford these tribunals a full opportunity to consider the issues before them and to rectify any errors it may have made. 471 U.S. at 857, 105 S.Ct. 2447. Unconditional access to the federal forum, the Court reasoned, would contravene the federal policy supporting tribal self-government by placing the federal courts "in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs." *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 16, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).

Accordingly, the Supreme Court and the Ninth Circuit Court of Appeals have held non-Indian defendants must exhaust tribal court remedies before seeking relief in federal court, even where defendants allege that proceedings in tribal court exceed tribal sovereign jurisdiction. *Burlington Northern Railroad Co. v. Crow Tribal*

---

**4.** In *National Farmers Union,* the Supreme Court recognized the question of whether a tribal court has exceeded its jurisdiction must be answered by reference to federal law. 471 U.S. at 853, 105 S.Ct. 2447. Consequently, the Court held that a federal court possesses jurisdiction under 28 U.S.C. § 1331 to determine whether a tribal court has exceeded the lawful limits of its jurisdiction. 471 U.S. at 853, 105 S.Ct. 2447.

*Council,* 940 F.2d 1239, 1244 (9th Cir. 1991), *citing, National Farmers Union, supra,* 471 U.S. at 856–57, 105 S.Ct. 2447, *Iowa Mutual Insurance Co., supra,* 480 U.S. at 16, 107 S.Ct. 971, and *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221 (9th Cir.1989). "The requirement of exhaustion of tribal remedies is not discretionary; it is mandatory." *Crawford v. Genuine Parts, Co., Inc.,* 947 F.2d 1405, 1407 (9th Cir.1991), *quoting, Burlington Northern Railroad Co. v. Crow Tribal Council, supra,* 940 F.2d at 1245.

Cognizant of the pendency of proceedings before the Blackfeet Tribal Court, the court is constrained by the principles of comity announced in *National Farmers Union* and *Iowa Mutual v. LaPlante* to abstain from granting GEC the relief it seeks in the present action. The directive of *National Farmers Union* mandates that this court abstain from proceeding in the present case until that point when the parties have exhausted *all* remedies available to them under the laws of the Blackfeet Tribe. 471 U.S. at 856, 105 S.Ct. 2447.

Judicial efficiency further compels the conclusion that the parties must exhaust tribal court remedies before proceeding in federal court. As noted by the Supreme Court, "the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed." *National Farmers Union, supra,* 471 U.S. at 856, 105 S.Ct. 2447. The Blackfeet Tribal Court is in the best position to develop the necessary factual record for disposition on the merits. Additionally, the Tribal Court is in the best position to develop the factual record regarding jurisdictional issues, such as whether the trust land upon which the accident occurred is the equivalent of alienated, non-Indian land. A fully developed factual record in Tribal Court also will allow the Tribal Court, or the Blackfeet Court of Appeals, to rectify errors, if any, that may have been made in the initial assertion of Tribal Court jurisdiction. *National Farmers Union,* 471 U.S. at 857, 105 S.Ct. 2447.

## C. *Strate's* Exception to Exhaustion

GEC argues that even if it has not exhausted its Tribal Court remedies, exhaustion is unnecessary in light of *Strate.* As noted, *supra, Strate* announced an exception to the exhaustion requirement which provides that "when it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana's* main rule ... the otherwise applicable exhaustion requirement must give way, for it would serve no purpose other than delay." However, GEC's reliance on this exception to the exhaustion requirement is misplaced because it is not clear at this juncture whether the cause of action arose on land covered by *Montana's* main rule.

In *Allstate Indemnity Co. v. Stump,* the Ninth Circuit Court of Appeals recently noted that the issue of whether a tribal court has jurisdiction over non-Indians generally depends upon whether the tribe controls the land on which the cause of action arose. *Allstate Indemnity v. Stump,* No. 97–35822, 1999 WL 1029492, at 3 (9th Cir. Nov. 15, 1999). In the instant case, it appears plausible as the record is developed thus far that Williams' accident and alleged injuries occurred on tribal land. As noted supra, the accident occurred on land held in trust for the tribe. Thus, neither *Montana's* main rule, nor *Strate's* exception to the exhaustion requirement, would apply here unless the trust land is deemed equivalent to alienated, non-Indian land. *See, Strate,* 520 U.S. at 454, 117 S.Ct. 1404 (holding that a highway right-of-way acquired by a state over land within the boundaries of an Indian reservation was "equivalent, for nonmember governance purposes, to alienated, non-Indian land"); *see also, Burlington Northern R. Co. v. Red Wolf,* 196 F.3d 1059, 1063–64 (9th Cir. 1999) (same holding regarding a right-of-way over reserva-

1094

tion land granted to a railroad by Congress). As the record is developed at this juncture, the court cannot make such a determination and it is this court's opinion that the Tribal Court is in the best position to develop the factual record upon which the determination relies.

### CONCLUSION

Therefore, for the reasons set forth herein, Williams' motion to dismiss is hereby GRANTED. Accordingly, GEC's request for preliminary injunctive relief is hereby DENIED, and the instant action is DISMISSED without prejudice.

IT IS SO ORDERED.